NO. 07-06-0478-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

JUNE 19, 2008
_____

YATES CARPET, INC. a/k/a YATES FLOORING CENTER
a/k/a YATES CARPET & INTERIORS
a/k/a DISCOUNT CARPET WAREHOUSE,

Appellant

v.

THE TRAVELERS LLOYDS INSURANCE COMPANY,

Appellee
_____

FROM THE 99TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2005-531,800; HON. WILLIAM C. SOWDER, PRESIDING
_____

*Memorandum Opinion*
_____

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

Yates Carpet, Inc. (Yates), doing business in Lubbock, Texas, appeals from a summary judgment granted in favor of The Travelers Lloyds Insurance Company (Travelers) and denying Yates' own motion for summary judgment. Travelers sought summary judgment on the basis that it had no duty to defend Yates in a lawsuit filed in Missouri under an insurance policy issued to Yates. On appeal, Yates contends it was entitled to summary judgment because an advertising injury was alleged in the Missouri

complaint and such an injury was covered under the insurance policy. We disagree and affirm the judgment.

### Background

CCA Global Partners, Inc., FA Cooperative, Inc., and FA Management Enterprises, Inc. (collectively referred to as "CCA") sued Yates for trademark infringement, unfair competition, deceptive and unfair trade practices, fraud, breach of contract and unjust enrichment. The dispute arose from an agreement Yates had entered into with CCA. Through the agreement, Yates received a license to use CCA's registered marks, proprietary marks, and FA System[1] as long as it purchased 80% of its floor covering products through arrangements established by CCA. Terms of the agreement also prohibited Yates from purchasing like items through any other cooperative or under a similar buying arrangement with others. Despite these restrictions and requirements, Yates executed a similar purchasing agreement with Mohawk Industries and Floorz without informing CCA. So too did it continue to use CCA's registered marks, proprietary marks, and FA System. CCA eventually discovered this, believed it to be a breach of their agreement, and initiated suit against Yates in Missouri.

At the time CCA filed suit, Yates was insured under a liability policy issued by Travelers and requested that Travelers provide it a defense. Travelers denied the request, contending that the matter fell outside the scope of coverage. This resulted in Yates initiating a declaratory action asking the trial court, among other things, to determine

---

[1]The FA System was defined in the complaint as consisting of unique and proprietary business methodologies, operational procedures, business techniques, advertising, sales, and promotional techniques, personnel training, purchasing practices, merchandising programs, access to favorable pricing from suppliers and distributors of floor covering products, and other matters related to the efficient operation of a retail floor covering business.

whether the claims in the Missouri suit were within the policy's scope. Travelers answered, denied liability, and counterclaimed for judgment declaring that it had no responsibility to provide a defense. Once issue was joined, the parties filed cross motions for summary judgment. That of Travelers was granted.

### *Law*

The standards by which we review summary judgment are well established and need not be discussed. Similarly settled is the standard used to assess whether an insurer has a duty to defend an insured against claims asserted in a lawsuit. That standard obligates us to compare the four corners of the complaint or petition with the four corners of the insurance policy. *National Union Fire Ins. Co. v. Merchants Fast Motor Lines, Inc.,* 939 S.W.2d 139, 141 (Tex. 1997); *Atlantic Lloyd's Ins. Co. of Texas v. Susman Godfrey, L.L.P.,* 982 S.W.2d 472, 475 (Tex. App.–Dallas 1998, pet. denied); *Feed Store, Inc. v. Reliance Ins. Co.,* 774 S.W.2d 73, 74-75 (Tex. App.–Houston [14th Dist.] 1989, writ denied). In doing so, we are to focus on the facts alleged in the document, as opposed to the legal theories mentioned. *Cigna Lloyds Ins. Co. v. Bradleys' Elec., Inc.,* 33 S.W.3d 102, 106 (Tex. App.–Corpus Christi 2000, pet. denied); *Atlantic Lloyd's Ins. Co. of Texas v. Susman Godfrey, L.L.P.,* 982 S.W.2d at 475. We also liberally construe the petition and resolve any doubts arising from the language in favor of the insured. *Trinity Universal Ins. Co. v. Cowan,* 945 S.W.2d 819, 825 (Tex. 1997).

### *Application of Law*

According to the policy at issue, Travelers obligated itself to indemnify Yates against claims involving "advertising injury," among other things. Moreover, such injury was defined as injury ". . . caused by an offense committed in the course of advertising your

3

goods, products or services . . . ." That, in turn, encompassed 1) the oral or written publication of material that slandered or libeled a person or organization or disparaged a person's or organization's goods, products, or services, 2) the oral or written publication of material that violated a person's right of privacy, 3) the misappropriation of advertising ideas or style of doing business; and 4) the infringement of copyright, title or slogan. Excluded from coverage, however, was advertising injury "arising out of . . . [b]reach of contract, other than misappropriation of advertising ideas under an implied contract . . . ." It is the latter clause that provides the basis for Travelers' contention that it need not defend Yates in the Missouri suit.

Authority has interpreted the phrase "arising out of" as requiring only an incidental relationship between the claim and the conduct excluded. *Sport Supply Group, Inc. v. Columbia Cas. Co.*, 335 F.3d 453, 458 (5th Cir. 2003); *Scottsdale Ins. Co. v. Tex. Sec. Concepts & Investigation*, 173 F.3d 941, 943 (5th Cir. 1999). Here, CCA alleged in its petition that "[a]ny right of Yates to utilize the Proprietary Marks . . . pursuant to license from Plaintiff was conditioned on Yates' compliance with conditions precedent contained in the Member Agreement . . . ." In other words, Yates had a contractual right to use CCA's trademarks and similar proprietary marks. Yet, by contracting with Mohawk, it breached its agreement with CCA and lost the privileges bestowed under its contract with CCA. Thus, it could no longer use the trademarks and like items, and when it continued to do so, Yates not only breached the agreement or contract but also committed the various bad acts encompassed within the multiple causes of action alleged.

As can be seen, the purported breach of contract has at least an incidental relationship to all the other acts of which CCA complains. Without the former, the viability

4

of the latter are questionable.  This then leads us to hold that the claims involved in the Missouri suit "arise out of . . . breach of the contract" for purposes of determining Travelers' obligation to defend Yates. *See Pennsylvania Pulp & Paper Co., Inc., v. Nationwide Mut. Ins. Co.,* 100 S.W.3d 566, 573 (Tex. App.–Houston [14th Dist.] 2003, pet. denied) (finding that all of the alleged claims of advertising injury arose from an alleged breach of a licensing agreement which were excluded from coverage under the insurance policy); *Southstar Corp. v. St. Paul Surplus Lines Ins. Co.,* 42 S.W.3d 187, 191 (Tex. App.–Corpus Christi 2001, no pet.) (finding that since the allegation of unauthorized taking or use of title arose from a breach of a dissolution agreement, the "advertising injury" arose from breach of contract and, consequently, was expressly excluded from coverage).  And, it matters not that some of CCA's claims implicate legal theories other than breached contract.  *See Cigna Lloyds Ins. Co. v. Bradleys' Elec., Inc.,* 33 S.W.3d at 105-06 (holding that while an "advertising injury" may in some instances cover patent infringement resulting from advertising activities, the facts alleged must be examined and not the legal theories). Thus, they were excluded from coverage.

In sum, and upon considering the question *de novo*, we conclude that the trial court did not err in granting Travelers' motion for summary judgment.  Furthermore, the latter is affirmed.


Brian Quinn
Chief Justice